## CIRCUIT COURT OF FAIRFAX COUNTY

Venator Group Specialty, Inc.

v.

MLK Associates, L.P., et al.

February 8, 2001

Case No. (Chancery) 170781

BY JUDGE MICHAEL P. MCWEENY

The case came before the Court for trial of the first and second prayers for relief under Count II of the Motion for Judgment (now deemed a Bill of Complaint). The case is on the equity side of the Court pursuant to Order of the Honorable Leslie M. Alden dated December 22, 2000. The same Order limited the scope of this proceeding by granting summary judgment to Venator Group Specialty, Inc., as to prayers for relief of Count II, numbers four through seven; granting summary judgment to MLK Associates, Limited Partnership ("MLK") on the declarations in its counterclaim; and granting summary judgment to Marshalls of MA, Inc. ("Marshalls") on its cross-claim. (Count I previously had been nonsuited and the third prayer for relief under Count II was withdrawn.)

### Factual Background

This case involves commercial property in the Tysons Corner area of Fairfax County. The property is owned in fee simple by the Antonoff Family Trust Partnership ("AFTP"), Trulie Investment Corp. ("Trulie"), and Joray Realty Corp. ("Joray"). These parties (or their predecessors) entered into a "Master Lease" dated April 26, 1974, as lessors with Giant of Virginia, Inc. ("Giant") as lessee. Giant subsequently assigned its interest as lessee to F. W. Woolworth Co., now Venator. Venator then subleased the premises to

Marshalls in 1980. In 1985, Venator assigned its interest as lessee under the Master Lease and lessor under the Sublease to AFTP and Thomas R. Green.

On April 1, 1987, two events took place. First, AFPT, Trulie, Joray, and Green entered into a Ground Lease with MLK as lessee. Second, AFTP, Trulie, Joray, and Green assigned any of their interest as "landlord or lessor, tenant or lessee or subtenant," including those under the Master Lease and Sublease, to MLK. It is the interpretation of the effect of this "Master Assignment" that is the subject matter of the two remaining prayers for relief.

### Doctrine of Merger

The doctrine of merger long has been recognized and defined in Virginia:

> It is described as the annihilation of one estate in another. It takes place usually when a greater estate and a less coincide and meet in one and the same person, without any intermediate estate, whereby the less is immediately merged — that is, drowned in the greater. To this result, it is necessary that the two estates should be in one and the same person, at one and the same time, in one and the same right.

*Little v. Bowen*, 76 Va. 724, 727 (1882) (internal citation omitted).

It is clear where there is no express agreement to merge an interest in real property, "in the absence of evidence showing contrary intention it is presumed that he intended to merge" the lesser interest into the greater. *Joyner v. Graybeal*, 204 Va. 543, 545, 132 S.E.2d 467 (1963). While the Court does not agree with MLK that "merger is presumed in Virginia only when there is absolutely no evidence to refute it" (Defendants' Trial Brief, p. 3), the presumption is rebutable.

### The "Master Assignment"

The "Assignment of Rights in Leases, Rents, and Profits" dated April 1, 1987, ("Master Assignment") is the document alleged to implicate the Doctrine of Merger, as by its terms MLK became lessor and lessee under the Master Lease and lessor under the Sublease. The doctrine of merger, if it is applied, would result in the Master Lease merging out of existence and becoming "drowned" in the Ground Lease, thus leaving the Sublease.

Two portions of the Master Assignment must be considered. First, page one reads in part:

FOR VALUE RECEIVED, Assignor hereby grants, sells, conveys, transfers, sets over, and assigns to Assignee all of its rights, title, and interest in and to the following:

A. All right, title, interest, and estate of Assignor as landlord or lessor, tenant or lessee, or as assignee of any rights of any landlord or lessor, tenant or lessee, or subtenant or sublessee in, to, and under all of the lease and/or sublease, agreements, licenses, assignments, and other agreements (except for . . . the "Ground Lease") . . . including, without limitation, the Master Lease . . . and those leases described. . . .

It is clear the Master Lease and Sublease described above are included. On page 5, however, it states:

(b) Assignee shall be and hereby is relieved from performing all of Assignor's obligations under that certain Lease (the "Master Lease"). . . .

On December 8, 2000, Judge Alden made two findings of fact that were incorporated in an Order of December 22, 2000, which stated they were "conclusively established for the purpose of the trial of the remaining claims in Count II of the Motion for Judgment after their transfer to the equity side of the Court." Review of the transcript suggests the language in the Order was not the ruling of Judge Alden on December 8, 2000, but rather that she found certain facts for the purpose of the summary judgment motions. Nevertheless, the Circuit Court speaks through its Orders and the Order was, in fact, signed.

At this point, the Court could enter into an analysis of the legal effect of a pretrial ruling that facts have been "conclusively established" for trial (see *Turner v. Wexler*, 244 Va. 124, 128, 418 S.E.2d 886 (1992)); however, such an analysis is unnecessary once the meaning of these "established facts" is examined. Therefore, this Court examines the document with the preliminary finding of facts that "all of the right, title, and interest of the landlord and of the tenant under the Master Lease . . . vested in MLK as of April 1, 1987," and "the greater estate and the lesser estate met in MLK as of April 1, 1987." In so doing, the Court turns to the transcript attached to the Order (and incorporated by the parties in their objections thereto) in order to place these two facts in context. Immediately following the two findings, Judge Alden stated "[b]ut I think [sic] question that is still unanswered, and about which there may be material facts in dispute, is the question of whether the language in paragraph B on Page 5 of the Assignment is language that is sufficient to

constitute a legally cognizable intermediate estate or encumbrance on the property so as to prevent the operation of a merger from occurring as of 4/1/87." Transcript, 12/8/00, p. 4. Further, "the intent of MLK as to whether a merger should occur is a matter of fact to be considered by the Court, but the Court also as a matter of equity has to determine whether those facts or that intention, whether it was properly effected or not, constitutes an outstanding claim of a third party or whether it constitutes an encumbrance." *Id.* at 5. Evidence, including the instrument itself, has been received to aid in those inquiries.

The first step in contract construction is to examine the words and their plain meaning to determine the intent of the parties. "It is the court's duty to give effect to the intention of the grantors so far as it can be ascertained from the four corners of the [instrument] itself." *Payne v. Kennay*, 151 Va. 472, 145 S.E. 300 (1927). Such an examination reveals the issue defined by Judge Alden.

Venator suggests that the effect of the Master Assignment was first to transfer all "right, title, interest, and estate" to MLK and then subsequently release MLK from the obligations under the Master Lease. In this way, there was identity of estates held by one entity at the same time, thus effecting a merger, and then there was a later release of a portion of the estate. The Court does not agree.

The Master Assignment is an integrated contract. The actions contemplated therein occur simultaneously, not seriatim. On the face of the instrument, the Court finds no identity of estate as would be necessary for merger, as the estates are not "in one and the same person, at one and the same time, in one and the same right." *Little v. Bowen*, 76 Va. at 727.

It has been suggested, however, that this seeming contradiction between "all right, title, interest, and estate" and relief from "obligation" under the Master Lease creates an ambiguity requiring further inquiry as to the parties' intent. While the Court does not find an ambiguity, evidence was received from Green, one of the parties to the Master Assignment, describing an intent as early as 1985 to maintain a division between "rights" and "obligations" to preserve future business flexibility. This intent is consistent with the language in the Master Assignment two years later and is substantial evidence that there was no intent to effect a merger in 1987 and defeat the plan for business flexibility.

Lastly, it is suggested that if the Court accepts the purpose of avoiding merger as the plan for business flexibility, a court in equity must not prevent merger as the plan is "not for an innocent purpose." *Allen v. Patrick*, 97 Va. 521, 525, 34 S.E. 451 (1899). Venator argues that the plan to prevent merger

is a plan to injure a third party, to wit Marshalls. The Court does not agree. Although Marshalls will be impacted if MLK effectuates a change in the premises, the plans are for a legitimate business purpose and equity will not act to force a merger.

## Conclusion

The Court finds that there was no merger as there was no identity of estate. The Master Assignment was unartfully drafted but was unambiguous as to the intent of the parties that no merger was to occur. Even should an ambiguity be implied, the Court finds the extrinsic evidence to be overwhelming that no merger was intended or effected. Venator's prayers numbered 1 and 2 for the declarations specified are denied.